Isaac COWENS, Appellant,

Sallie Gonzales

v.

SIEMENS–ELEMA AB and Elema Schonander, Inc., Appellees.

No. 87–1347.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 11, 1987.

Decided Jan. 26, 1988.

Sharon A. Cooney, Kansas City, Mo., for appellants.

John M. Kilroy, Jr., Kansas City, Mo., for appellees.

Before JOHN R. GIBSON, Circuit Judge, HENLEY, Senior Circuit Judge and WOLLMAN, Circuit Judge.

HENLEY, Senior Circuit Judge.

Isaac Cowens appeals from a final judgment entered by the district court[1] upon a jury verdict in his products liability action. Cowens instituted this proceeding against the defendants, Siemens–Elema AB, a Swedish corporation (Siemens), and Elema Schonander, Inc., an Illinois corporation (Elema Schonander), after he suffered an eye injury which he alleged resulted from the defective design of an electronic lung ventilator manufactured by Siemens and distributed by Elema Schonander. The jury found in favor of the defendants on both Cowens' claim of product design defect and his claim of product warning defect. For reversal, Cowens maintains that the district court erred by (1) excluding certain empirical testimony of James K. Blundell, an expert witness; (2) excluding certain testimony of Joel Highstrom, a ventilator service technician; (3) submitting a jury instruction defining the term "unreasonably dangerous"; (4) dismissing Cowens' breach of warranty claim; (5) making prejudicial remarks from the bench; (6) failing to exclude evidence of Cowens' workers' compensation settlement; and (7) refusing to permit Cowens to argue or to instruct the jury that the appellees' failure to produce an available witness, the head of the production department at Siemens, raised a presumption that this witness's testimony would have been adverse to them. For reasons to be stated, we affirm.

This appeal is an outgrowth of the following facts. From 1978 through 1984, Cowens was employed as a respiratory equipment technician at St. Luke's Hospital in Kansas City, Missouri. In order to mechanically assist patient breathing, St. Luke's utilized a number of electronic lung

---

1. The Honorable Joseph E. Stevens, Jr., United States District Judge, Western District of Missouri, presiding. Federal jurisdiction in this matter was premised upon diversity of citizenship, 28 U.S.C. § 1332.

ventilators manufactured and distributed by the appellees.

On December 29, 1983, the date of the accident which provides the basis of this suit, Cowens was present at St. Luke's when a gauge on a Siemens Serro Ventilator Model 900B indicated that a wire mesh screen[2] through which air passes to and from the patient, had possibly become blocked or contaminated. In response, a respiratory therapist removed a part of the ventilator known as the flow transducer, in which the screen was contained, and attempted to take out the screen. When he was unable to remove the screen, the therapist gave the transducer to Cowens' supervisor, who was also unsuccessful. Cowens' supervisor then requested that Cowens hold the transducer while the supervisor attempted to remove the screen with a tool described as "a pair of bull nose pliers." The pliers slipped out of the mechanism and hit Cowens in his right eye, causing extensive damage; Cowens remains legally blind in the eye.

Cowens subsequently commenced this action, alleging that the ventilator was manufactured and designed in a defective manner, causing the screen to become stuck and creating an unreasonable risk of danger. Specifically, the first two counts of Cowens' amended complaint sought recovery on the theory of strict liability because of the alleged defect and the appellees' failure to warn. In addition, Count III alleged that the appellees had breached an implied warranty of fitness for purpose because of the danger presented to purchasers and users, and Count IV alleged that the appellees' failure to use ordinary care constituted negligence. Cowens sought to recover medical expenses, lost wages, and future earnings lost as a result of emotional problems which he allegedly developed in response to the accident, and which eventually led to his discharge from employment. The district court dismissed Cowens' breach of warranty claim after concluding that the applicable Missouri statute precluded a claim for breach of warranty brought by an employee of a purchaser because the employee was not in privity with the seller. As indicated, the jury returned a verdict in favor of the appellees on the remaining claims. Cowens' motion for a new trial was denied and this appeal followed.

Cowens first maintains that the district court erred in excluding certain empirical testimony of an expert witness, Dr. James K. Blundell. The record discloses that Blundell is a doctor of mechanical engineering and an associate university professor of engineering. Although the transducer and wire mesh screen involved in Cowens' accident were never located, Blundell studied the apparatus surrounding the wire mesh screen in other ventilators manufactured by Siemens and examined Siemens' design drawings. As a result of these studies, Blundell testified concerning his opinion that Siemens' use of inappropriate tolerances caused the screens to become stuck as a result of dimensional factors or "secondary" causes such as contamination. In addition, Blundell opined that the method of assembly resulted in a phenomenon called "flaring," which caused the screens to stick in a hole in the transducer.[3] Blundell fur-

---

**2.** The parts of the ventilator pertinent in this case are the flow transducer, which is designed to measure air flow to and from the patient, and a wire mesh screen contained therein. Air passes through the wire mesh screen, which fits into a "locating hole" in the transducer. The screen creates a resistance causing some of the air to deflect through a measuring port. The wire mesh screen is designed to be removable in order to permit decontamination between patients or replacement in the event that the screen becomes damaged. Ordinarily, the screen can be removed if a small holding screw is removed and the transducer turned over and tapped into the palm of one's hand.

**3.** Blundell testified that the tolerances or standards which Siemens used in fitting the wire mesh screen into the locating hole were of the same diameter; he testified that the closer the diameter of each part, the greater the chance of sticking. In explaining the "flaring" phenomenon, Blundell testified that the screens were composed of three parts: an outer ring, an inner ring, and the wire mesh. These parts are pressed together to form a single ring with the wire mesh inside. Based upon his examination of the designs, Blundell testified that he anticipated that the pressing together of the parts during the assembly process would force the top ring to expand outward, causing it to have a

ther testified that he believed Siemens should have provided a warning informing users of the likelihood of the screens' sticking.

The district court refused, however, to permit Blundell to testify with respect to approximately 230 dimensional measurements which he performed upon fourteen wire mesh screens which evidenced the flaring phenomenon. Similarly, the court disallowed Blundell's testimony concerning statistical calculations made after his examination of the fourteen screens. Counsel for the defendants objected to the proffered testimony on the ground that it was speculative and irrelevant because Blundell could not establish whether the screens measured were manufactured at any date close to manufacture of the screen involved in Cowens' accident. The district court sustained the objection, noting that the court did not believe that the testimony, which it found "very tenuously related to the issues in this lawsuit," would assist the jury.

Cowens contends that a discrepancy in the manufacturing dates of the screen involved in the accident and the measured screens was of no consequence because Siemens continued to use the same design specifications. In addition, Cowens argues that the district court erred in excluding the testimony because it would have assisted Blundell in fully explaining the flaring phenomenon and would have provided crucial circumstantial evidence which may have assisted the jury in determining why the screen involved in the accident had become stuck.

 Our review of the record, however, persuades us that disparate manufacturing dates may have been of great significance in this case, and fully justified the exclusion of the testimony in question. It is settled law that evidence of experimental tests is inadmissible absent a foundational showing that the tests were conducted un-

der conditions substantially similar to those surrounding the incident at issue. *See Hale v. Firestone Tire & Rubber Co.*, 820 F.2d 928, 932 (8th Cir.1987). Further, the admissibility of such evidence is a matter resting largely in the discretion of the district court, and its decision in this regard will not be overturned absent a clear showing of an abuse of discretion. *Id.*

On voir dire, Blundell stated that he had no idea when the tested screens were made nor did he have any "knowledge of the exact date of manufacture of any screen." Significantly, the deposition testimony of Steve Eriksson, a designer in Siemens' ventilator division, indicated that the dimensions of the screens and holes where the sticking allegedly occurred would differ due to ordinary wear and tear of the tools used in manufacturing. In these circumstances, we are inclined to agree with the district court that the dimensions and statistical data taken from the screens measured by Blundell, which could have been manufactured several years later than the screen involved in the accident,[4] provided no useful information in determining whether the flaring phenomenon in fact caused the screen in the present case to stick. As such, Blundell's testimony in this regard would have been highly prejudicial to the appellees and of little probative value. Finally, because Blundell was permitted to express and explain his opinion as to the cause of the sticking, the exclusion of his empirical and statistical testimony cannot be said to have prejudiced Cowens. *See Sprynczynatyk v. General Motors Corp.*, 771 F.2d 1112, 1124 (8th Cir.1985) (exclusion of experimental evidence which was largely cumulative in nature held not to constitute an error), *cert. denied*, 475 U.S. 1046, 106 S.Ct. 1263, 89 L.Ed.2d 572 (1986). Accordingly, we conclude that the district court did not abuse its discretion in excluding this portion of Blundell's testimo-

---

greater diameter than the bottom ("flare"), and increasing the likelihood of sticking.

**4.** The only information with regard to the manufacturing date of the screen involved in the accident is that it had to have been manufac-

tured prior to the date of the injury, which occurred in 1983. Blundell's testimony indicates, however, that the screens he measured may have been manufactured as late as 1986.

ny.[5]

Cowens' next argument on appeal is closely related to that last discussed. Cowens contends that the district court erroneously refused to permit Joel Highstrom, a ventilator service technician at Kansas University Medical Center, to testify concerning his experience in 1984 and 1985 with wire mesh screens becoming stuck in the locating holes of appellees' ventilators. The transcript of Highstrom's testimony reveals that he was permitted to testify that he had encountered a stuck screen approximately a year and a half before trial. The district court refused to permit further examination along this line, however, noting that the incident referred to by Highstrom occurred after Cowens' accident; as with Blundell's excluded testimony, the district court stressed the dissimilarity of conditions resulting from the possibility of changes occurring in the production process or in the tools involved therewith.

For reasons stated in discussion of the exclusion of Blundell's testimony, we find no error in exclusion of Highstrom's testimony on account of dissimilarity of conditions. Similarly we reject Cowens' assertion that the district court erred in refusing to permit Highstrom to testify as to why, in his opinion, the screens became stuck; such testimony would have been highly prejudicial and provided no more than a speculative basis for concluding that a similar factor caused the screen in the present case to stick.

Cowens next maintains that the district court erred by submitting a jury instruction defining the term "unreasonably dangerous." Over Cowens' objection, the court submitted the following instruction, numbered Instruction No. 22:

"Unreasonably dangerous" means dangerousness to an extent beyond that which would be contemplated by a typical ventilator equipment technician who knew about the characteristics of ventilators, as those characteristics are commonly understood by similar personnel.

Cowens argues that the submission of this instruction was improper because the Missouri Supreme Court has expressly stated that "the concept of unreasonable danger, which is determinative of whether a product is defective in a design case, is presented to the jury as an ultimate issue without further definition." *Nesselrode v. Executive Beechcraft, Inc.*, 707 S.W.2d 371, 378 (Mo.1986) (en banc). Relying upon *Nesselrode*, Cowens objected to Instruction No. 22 because it "invade[d] the province of the jury." In addition, on appeal,[6] Cowens argues that Instruction No. 22 is in contravention of Missouri substantive law because the court in *Nesselrode* also expressed its reservations with the "consumer expectation" concept in products liability cases. Consequently, Cowens argues that the district court erred in instructing the jury with respect to the danger contemplated by a "typical ventilator equipment technician."

On many occasions, this court has stated that a district court judge has broad discretion in choosing the form and language of jury instructions " 'as long as the entire charge fairly and adequately contains the

**5.** In addition, Cowens argues that the exclusion of Blundell's testimony was improper because, aside from Blundell's explanation of the flaring theory, this was the only evidence tending to establish that dimensional problems may have caused the screen to stick. Cowens relies upon the Third Circuit's decision in *Breidor v. Sears, Roebuck & Co.*, 722 F.2d 1134, 1138–39 (3d Cir.1983), in support of his assertion that the limited available evidence rendered the exclusion of this testimony improper. Cowens' reliance upon *Breidor* is misplaced for several basic reasons to some extent mentioned in text. First, unlike the expert in *Breidor*, Blundell was not prohibited from stating his ultimate opinion as to the cause of the accident. Moreover, the

court in *Breidor* explicitly noted that the excluded testimony was neither lacking in foundation nor speculative; the same cannot be said in the present case.

**6.** The appellees argue that because Cowens did not specifically state this ground in objecting to Instruction No. 22, he is barred from asserting this error on appeal. While Fed.R.Civ.P. 51 requires that an objection to an instruction state distinctly the matter objected to and the grounds of objection, Cowens' general objection to the submission of the instruction nevertheless impels us to consider its substantive propriety.

law applicable to the case.'" *Chohlis v. Cessna Aircraft Co.*, 760 F.2d 901, 904 (8th Cir.1985) (quoting *Monahan v. Flannery*, 755 F.2d 678, 681 (8th Cir.1985)). Hence, in determining whether the court in the present case erred in submitting an instruction defining the term "unreasonably dangerous," we must read the charge as a whole. *Barger v. Charles Machine Works, Inc.*, 658 F.2d 582, 586 (8th Cir. 1981). The submission of an erroneous instruction does not require reversal if the error was cured by a subsequent instruction or by consideration of the entire charge. *Id.*

■ After examining the applicable case law and considering the instructions in the instant case in their entirety, we are persuaded that the instructions as a whole fairly and adequately informed the jury of the relevant Missouri law. Initially, while we are cognizant of the Missouri Supreme Court's expression in *Nesselrode* of its dissatisfaction with the consumer expectation doctrine, we are less inclined than is Cowens to interpret the court's statements in this regard as an explicit decision to reject this concept altogether. The court in *Nesselrode* noted that the consumer expectation doctrine was a "virtual stranger to Missouri law of strict tort liability," but did not expressly overrule or reject prior Missouri cases which had mentioned this concept. 707 S.W.2d at 377–78 n. 10.

More importantly, after examining the instructions submitted in the present case in their entirety, we are persuaded that they properly informed the jury that the focus of its inquiry was whether the product was made and sold in a defective condition, and whether such defect was the cause of Cowens' injury. *See Blevins v. Cushman Motors*, 551 S.W.2d 602, 608 (Mo.1977) (en banc). In this connection, we note in particular Instruction Nos. 14 through 21, which were patterned after the Missouri Approved Instructions submitted in strict liability and products liability cases. In these circumstances, we are not

inclined to conclude that the submission of the challenged instruction constituted reversible error. Nor do we agree with Cowens' assertion that the instruction invaded the province of the jury; at all times, the ultimate issue in the case remained for the jury's resolution.

Cowens also argues that the district court erroneously dismissed his claim for breach of warranty. The court dismissed the claim after concluding that the applicable Missouri statute, Mo.Rev.Stat. § 400.2–318, did not permit a warranty claim brought by an employee of a purchaser because such an employee is not in privity with the seller. Section 400.2–318 allows recovery for only a very limited set of non-privity parties. It reads:

> A seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section.

Although the courts of Missouri have not interpreted § 400.2–318 with regard to classes of persons to be considered in horizontal privity [7] with a seller, this issue was confronted by a federal district court interpreting Missouri law in *Teel v. American Steel Foundries*, 529 F.Supp. 337, 344–45 (E.D.Mo.1981). The court in *Teel* determined that § 400.2–318 did not extend to employees of purchasers because (1) the language of the statute extends warranty protection to only a limited, specified class of persons; (2) the official comment reveals a legislative intent that the section be read restrictively; (3) the Missouri Legislature did not enact alternative sections which expand warranty liability; and (4) a number of other jurisdictions have read identical statutes restrictively. *Id.* The district court in the present case cited *Teel* as the

---

7. Horizontal privity refers to users other than purchasers. The appellant correctly notes that the Missouri courts have extended liability for

breach of warranty to remote purchasers. *See, e.g., Groppel Co. v. United States Gypsum Co.*, 616 S.W.2d 49, 58 (Mo.Ct.App.1981).

basis of its decision to dismiss Cowens' breach of warranty claim.

■ A district court's interpretation of the law of the state in which it sits is entitled to deference. *Stratioti v. Bick,* 704 F.2d 1052, 1054 (8th Cir.1983). While we are not bound by a district court's interpretation of state law, we will reverse that interpretation only if we find that the district court has incorrectly applied local law. *Id.* In the present case, we cannot say that the dismissal of Cowens' warranty claim stems from an incorrect application of local law; although there is no state case law on point, the statutory provision in question appears to have been properly interpreted in *Teel.* Accordingly, we reject Cowens' contention that the district court erroneously dismissed his breach of warranty claim.

Cowens next argues that the district court judge abused his discretion by making prejudicial remarks from the bench which revealed to the jury his bias against Cowens. Specifically, Cowens maintains that the judge improperly interrupted John Pro, Cowens' treating psychiatrist; that the judge interrupted Ray Thruilliez, Siemens' technical representative, during examination by Cowens' attorney, implying that Cowens' attorney had done something improper; and that the judge revealed his bias during the examination of Dr. Blundell by questioning Blundell's analysis and counsel's foundation. In addition, Cowens contends that on various occasions the judge made comments disfavorable to Cowens' attorney.

Cowens' attorney failed to object to any of these statements at trial. Consequently, our review at this juncture is for plain error. Fed.R.Civ.P. 51. We have noted that we are hesitant to reverse on the basis of alleged misconduct unless it can be said that the trial judge's conduct "pervaded the overall fairness of the proceedings." *United States v. Bland,* 697 F.2d 262, 265 (8th Cir.1983). We are not persuaded that the conduct of the judge in the present case rises to this level.

■ Turning specifically to the contention that the judge abused his discretion by making certain comments during the testimony of John Pro, Cowens' treating psychiatrist Ray Thruilliez, and Dr. Blundell, we are confident that no abuse occurred. The transcript of Pro's testimony discloses that the trial court interrupted Pro's testimony requesting that Pro "let [Cowens' attorney] ask questions and you answer questions" after Pro had begun a narrative discussion of the cause of post-traumatic stress. This interruption can only be characterized as an attempt to have Pro's testimony elicited in a manner easier for the jury to understand. As such, the interruption was not improper. *See Hale v. Firestone Tire & Rubber Co.,* 756 F.2d 1322, 1330 (8th Cir. 1985) (no abuse where trial judge intercedes for purposes of clarification). Similarly, the district court interrupted the colloquy between Ray Thruilliez and Cowens' attorney in order to prompt a proper method of impeachment and prevent an argumentative line of questioning;[8] we do not think that the court's participation in this regard can be characterized as an attempt to disparage Cowens or to prevent the jury from exercising its impartial judgment. Likewise, many of the court's comments made during testimony were designed to elicit a proper foundation[9] and represented

---

**8.** The challenged intervention during Thruilliez's testimony follows:

Appellant's Counsel:
And was it also your testimony, Mr. Thruilliez, you decided that it wasn't worth while because you couldn't make any money on it?
Thruilliez:
That's not true.
Appellant's counsel:
You do not recall testifying to that?
The court:
I am sorry. Let's do it right. If you have got it on the record use the record and ask him if the question was asked and answered and the answer was given. Don't argue with him.

**9.** These include the following comments made by the court after the appellees' attorney voiced objections based on the lack of foundation:
The court:
I don't understand that. This is a fishing expedition again. Hypothesize and let him tell you if he has an opinion.

\* \* \* \* \* \*

The court:
Yes. You may have him testify how he gets there. You didn't hypothesize anything.

an attempt to clarify the presentation of evidence, which, as noted, is not indecorous. While the district court might possibly have avoided some of the allegations concerning comments by making such comments outside the hearing of the jury, the purpose of the comments certainly cannot be characterized as improper and we do not think that their tenor was prejudicial.

■ Nor do we find abuse in the remaining comments which Cowens asserts were improper. Although it may have been unnecessary for the district court judge to have elaborated during Blundell's testimony with regard to his reservations where small samples are used to provide the basis of statistical evidence,[10] we do not think that the judge's statement can be considered prejudicial in the circumstances of this case. Our reading of the court's comment does not reveal a "disbelief" in Blundell's testimony as is insisted by Cowens; rather, it is apparent that the court questioned the probative value of statistics derived from the testing of only fourteen screens. Further, the tenor of the comment fails to reflect any animosity which Cowens argues was displayed.

At this juncture we note that the trial lasted seven days and produced over seven volumes of transcripts. After reviewing these transcripts, we are not left with the impression that the district court judge's comments tainted the trial with an actual bias or an appearance of partiality. *Cf. United States v. Singer,* 710 F.2d 431, 436–37 (8th Cir.1983). Rather, the record as a whole reflects that the judge attempt-

ed to make the presentation of evidence in a complex and lengthy trial as clear and proper as possible. Further, the record discloses that the judge provided constructive and helpful comments to appellant's counsel. In sum, we find no abuse.

Cowens next contends that the district court erred by admitting evidence of the amount of money Cowens received in workers' compensation benefits. On direct examination by his attorney, Cowens testified at several points about the financial stress he had undergone after the accident. In addition, Dr. Pro testified that financial stress contributed to Cowens' psychological deterioration. In response to this testimony, the appellees were permitted to introduce evidence of Cowens' workers' compensation settlement.

While it is true that evidence of payments received from a collateral source is ordinarily inadmissible, *see Hannah v. Haskins,* 612 F.2d 373, 375 (8th Cir.1980), we have recognized that a plaintiff's testimony on direct examination may make evidence of payments from a collateral source relevant and necessary for purposes of rebuttal.[11] *See Lange v. Missouri Pacific Railroad,* 703 F.2d 322, 324 (8th Cir.1983) (per curiam). Further, in *Lange,* we stated that "the scope of permissible inquiry is set by the direct examination and the usual rules on cross-examination apply." *Id.*

■ After reviewing the relevant portions of the record in light of these principles, we conclude that the district court committed no error in permitting the appel-

---

Again, we don't have any idea what his basis for reaching a conclusion is. You see, these people aren't testifying as to personal observations about things relevant to the cause of action. They are testifying to things in the abstract, in academic or abstract plane and you have to lay a foundation. Try again.

**10.** During Blundell's testimony and in the presence of the jury, the court stated:

Doctor, this may not be germane but it may be germane because we are talking about a real situation here. I have always been puzzled by the operation of small sample statistics in justifying it at all if it, in fact, arises from the reality of so small a number in your model, why deal with statistics at all? Why not deal with what is?

\* \* \* \* \* \*

I recognize the life work of a statistician is to make his wisdom universal, but I am not sure in the small sample situation statistics are necessary. Why couldn't you deal in this situation with the reality of what the facts are with respect to these screens and produced in this situation?

**11.** The Missouri courts have also recognized the admissibility of evidence of collateral payments in similar circumstances. *See Stanziale v. Musick,* 370 S.W.2d 261, 268 (Mo.1963); *Hughey v. Graham,* 604 S.W.2d 626, 628–29 (Mo.Ct.App. 1980).

lees to cross-examine Cowens with regard to his receipt of workers' compensation benefits. This evidence bore a relevant relationship to the credibility of Cowens' statements on direct examination and provided the appellees with a basis for rebuttal. Further, we note that the district court, at Cowens' request, instructed the jury as to the limited purpose of this evidence.[12] Finally, the admission of the evidence cannot be said to have prejudiced Cowens because the jury found in favor of the appellees on the issue of liability. *See Clarkson v. Townsend,* 790 F.2d 676, 678 (8th Cir.1986) (per curiam).

Cowens' final contention is that the district court erred in refusing to instruct the jury or to otherwise allow Cowens' attorney to argue that the appellees' failure to call the head of Siemens' production department in Sweden raised a presumption that his testimony would have been adverse to appellees. We disagree.

Although a party's failure to produce or account for an important witness ordinarily may create an inference that such witness's testimony would have been unfavorable, *Midland Enterprises v. Notre Dame Fleeting & Towing Service, Inc.,* 538 F.2d 1356, 1358 (8th Cir.1976), the district court here properly refused to instruct the jury with respect to the availability of this inference because the record does not support Cowens' assertion that Mr. Mossberg, the witness in question, possessed alleged relevant information. In fact, our examination of the record persuades us that an available witness from Siemens, Mr. Eriksson, possessed the knowledge which Cowens asserts only Mossberg could testify to.[13] Thus, the district court properly refused to submit the requested instruction.

In conclusion, we have reviewed each of Cowens' assignments of error and conclude

that they are without merit. Accordingly, the judgment of the district court is affirmed.

---

**12.** In relevant part, Instruction No. 25 advised the jury that evidence of Cowens' receipt of such benefits "may not be considered by the jury as barring his recovery in this case or diminishing the amount of damages, if you should find that plaintiff is entitled to recover under the evidence and the law."

**13.** Cowens argues that the instruction should have been given because Mossberg is "the person at Siemens who would know if transducers were returned to Siemens with screens stuck in the locating hole due to dimensional problems." The testimony at trial, however, established that Eriksson possessed equal or more knowledge in this regard.