John **HOPFINGER**, Plaintiff,

v.

**KIDDER INTERNATIONAL, INC.**, Defendant.

No. 92–0249–CV–W–8.

United States District Court, W.D. Missouri, W.D.

July 9, 1993.

ice in a case involving a public official is properly addressed by the court.

Timothy W. Monsees, James C. Morrow, Daniel T. DeFeo, David M. Mayer, Myerson, Monsees & Morrow, Kansas City, MO, for plaintiff.

Michael W. Oliver, Wallace, Saunders, Austin, Brown & Enochs, Chartered, Kansas City, MO, for defendant.

## ORDER

STEVENS, Chief Judge.

This case is before the Court on several post-trial motions. This lawsuit was brought by plaintiff against defendant corporation for injuries sustained while using a waterski manufactured by defendant. Plaintiff alleged negligence, failure to warn and products liability in his original complaint, but only submitted on products liability and failure to warn. On April 23, 1993, the jury returned a verdict for plaintiff in the amount of $3,600,000. The jury found defendant to be 100% at fault. The Court then entered final judgment on that verdict. The parties have filed a number of post-trial motions, all of which are now fully briefed. The Court will address each in turn.

### Plaintiff's Motion to Register Judgment

Plaintiff requests permission to register the judgment in this case in other districts so that he may execute the judgment against defendant wherever defendant's assets may be found. This unopposed motion is merited and shall be granted.

### Defendant's Motion for Recusal or Disqualification

Defendant moves this Court to disqualify itself under 28 U.S.C. § 455 from considering the post-trial motions in this case because defendant alleges that the Court was not fair and impartial during the course of the trial. As grounds for his motion, defendant sets out a list of occurrences and rulings that purportedly demonstrate this Court's

bias and partiality. *See* Defendant's Motion for a New Trial, incorporated by reference.[1]

As defendant correctly notes, a judge must recuse from a case if a reasonable person with knowledge of the circumstances would question the judge's impartiality, even though no actual bias or prejudice is shown. *See, e.g., Liljeberg v. Health Services*, 486 U.S. 847, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988).

Defendant concludes that the Court was angry at the president of defendant corporation for failing to settle this case, and displayed this hostility towards defendant such that an appearance of bias or prejudice was apparent.

The first example offered by defendant to show bias was the sequence of events that took place after opening arguments. The Court took the extraordinary step of telling counsel for defendant and plaintiff that this case should have been settled before trial. The Court also told defendant's counsel that the president of defendant Kidder International, Dennis Kidder should be in the courtroom to hear the impact of plaintiff's case. The Court's intention was that the personal involvement of Mr. Kidder would unleash settlement negotiations that the Court understood to be bottled up.

Defendant's counsel interprets the Court's comments as bias and anger towards defendant and against Mr. Kidder in particular. However, the Court finds it ironic, as it did when considering defendant's motion to recuse shortly after this conversation, that when the Court assumes the management and facilitator role urged on it by court administrators, it draws a motion to recuse.

For many years, this Court has been directed to assist parties in reaching a fair settlement of their claims without resorting to the costly and unpredictable forum of a jury. This case seemed especially ripe for settlement. This Court practiced in the defense bar for many years before taking the bench. In his time on the bench, this judge has witnessed a great many trials and has become experienced in assessing the strength of a case in the eyes of the jury. It

---

1. Defendant raises the same allegations of bias in his Motion for New Trial.

is in light of these experiences that the Court took the step of urging, in admittedly strong words, the settlement of this case. The Court was aware of the difficulty the parties had had in recent weeks preparing for trial. The Court also was aware that the cases were less than fully prepared when the parties met with Magistrate John T. Maughmer to discuss settlement. The Court also knew that Mr. Kidder had been out of the country for an extended period of time immediately before trial and that communication with him was difficult. Finally, the Court saw first hand the impact of the opening statements.

After considering all of these factors, the Court rightly concluded that this case involved serious exposure for defendant and that settlement negotiations had not been given serious consideration. The Court's motive for demanding Mr. Kidder's presence and telling the parties to talk settlement did not flow from anger towards defendant. Rather, the Court acted out of concern that defendant had grossly underestimated the depth of exposure and the jury appeal of plaintiff's case. The size of the ultimate verdict bears out the Court's concerns.

The Court finds it ironic indeed that its efforts at avoiding defendant's financial ruin would be met with such indignation.

After the Court pushed settlement talks, trial resumed and plaintiff called Mr. Kidder. In Mr. Kidder's absence, plaintiff was granted leave to read portions of his deposition. Defendant asked permission to read other portions of the deposition as cross-examination. The Court denied such permission because the deposition portions defendant wished to read were not from the cross-examination in the deposition, and defendant had stated that Mr. Kidder would be available later to testify. Defendant argues that the Court's adverse ruling was prejudicial and that it flowed from the Court's previously-aired impatience with Mr. Kidder for not being present.

Federal Rule of Civil Procedure 32(a)(4) provides that if only part of a deposition is read by a party, the other party may read additional parts that "in fairness" ought to be considered as well. Defendant represented to the Court before the deposition testimony

that Mr. Kidder would be present to testify. Therefore, the Court believed that Mr. Kidder's full and fair testimony for defendant could be taken at that time. Any deposition testimony could be addressed "in fairness" when Mr. Kidder testified in person.

Next, defendant contends that the Court was prejudiced because it repeatedly allowed punitive damages arguments. Defendant contends that plaintiff's counsel argued punitive damages when he stated that witnesses said "safety doesn't sell," that warnings on the skis would hurt sales, and that defendant could have added a warning for only 10 cents per ski.

Although plaintiff did present evidence on these points and did argue them in closing, the effect of these statements was not to demand punishment or to ask that a message be sent to defendant, but to show that defendant's reasons for not including warnings or a different design were not just based on a lack of need. Mr. Kidder, defendant's corporate representative Mr. Kizzair, and defendant's counsel repeatedly contended that warnings and alternative designs were unnecessary because the current waterski design was safe for all users. The reason that no warning was placed on the skis, they argued, was that there was no safety reason for them.

The statements offered by plaintiff may tend to show, instead, that a financial reason existed for not including warnings or designing safer skis. These statements bore directly on the credibility of the witnesses. While it is clear to the Court the these statements constituted permissible cross-examination and subsequent argument, it is even more clear that the Court did not allow these statements due to any bias or prejudice against defendant.

Next, defendant argues that the Court was biased in its questioning of witnesses. The Court has asked, and will continue to ask, questions of witnesses that it feels will aid both itself and the jury in understanding the key issues in a case. *See* F.R.E. 614(b) (court may interrogate witnesses). This is particularly so in the case of expert witnesses. Oftentimes, lawyers will be so familiar

with the jargon used by experts and the theories upon which they rely, that the jury is lost in the exchange between counsel and expert. The Court then, as it did in this case, steps in to clarify an area that was either confused or was inadvertently not pursued. As the Court repeatedly admonished the jury, its questions are not meant to indicate to the jury which way they should decide. Rather, the Court's questioning merely aids the search for truth.

Moreover, defendant did not object at any time to either the amount or nature of the Court's questioning. *See* F.R.E. 614(c). The Court's questioning in this case was fair and unbiased.

For its next example of bias, defendant argues that the Court required defendant to submit alleged inconsistent statements to the bench before allowing any attempt at impeachment. On a number of occasions, the Court determined that such attempts were not fairly labelled "impeachment" and did not allow the alleged inconsistent statements to be used.

The Court's management of attempted impeachment was a proper use of the Court's discretion in exercising "reasonable control of the mode and order of interrogating of witnesses and presenting evidence so as to ... (3) protect witnesses from harassment or undue embarrassment." F.R.E. 611. The Rules of Evidence do not allow lawyers to present any statement they wish to introduce as evidence to be put forward as a "prior inconsistent statement." The Court may put limits, such as prior review, on the use of such statements to prevent witnesses from being bombarded by statements counsel thinks might be inconsistent. *Cf.* F.R.E. 613(a) (requiring disclosure of inconsistent statement to opposing counsel). The Court employed this tool in this case, as well as others, to ensure that attorneys make honest and proper use of the overused and misused tool of impeachment. The Court finds no biased intent or appearance in this regard.

Next, defendant argues that the Court exhibited bias when it ordered counsel not to discuss Mr. Kidder's testimony with Mr. Teeter during a break before Teeter's testimony. The Court took this action because Mr. Kidder had testified as to the contents of a conversation with Mr. Teeter. The Court's understanding from the evidence presented up to that point was that Mr. Teeter, defendant's expert, had a much different and more damaging view of that conversation. The Court took the measure of preventing communication so that the jury could hear Mr. Teeter's independent recollection of this conversation. The Court can identify nothing improper in this action.

For his next point, defendant argues that the Court ridiculed Dr. Fuller, defendant's anatomist, in the eyes of the jury by parroting the African–American spiritual "Dem' Bones." The Court was attempting to clarify for the jury the distinction between the areas of expertise of a biomechanist, who had testified earlier, and Dr. Fuller, who was an anatomist. The biomechanist studies the relation of the human body to external devices, while an anatomist studies the relations of parts of the body to one another. The Court found the familiar saying, "the knee bone's connected to the foot bone" as a way to convey clear information to the jury about the role of an anatomist while adding a bit of levity to a drawn out trial. That the defendant could infer sinister intent to such a comment is preposterous.

Next on defendant's list of alleged improprieties is that the Court refused to admit and did not even examine a five minute videotape showing the disabled plaintiff putting on a waterski while sitting in a chair and using a teacup of water to lubricate the binding. The Court refused to admit the videotape because the conditions of the experiment were so markedly different from the normal use of a waterski. The conditions of the experiment were not disputed by the parties. Based on what was represented to the Court, the Court decided that any experiment taken under those conditions would not be helpful to the jury and would be severely prejudicial.

Defendant contends that the Court was biased because it did not offer to view the videotape before ruling. When a videotape so clearly distorts the conditions that are normal under the circumstances, the Court is

not compelled to entertain futile gestures. Such a decision does not demonstrate bias.

Finally, defendant argues that the Court was biased because it did not give a withdrawal instruction on the negligence issue. Crafting of the jury instructions is within the discretion of the trial court. They should be assembled in accordance with the law and, to the extent possible, should prevent jury confusion. The Court's decision not to give a withdrawal instruction did both.

The General Comment to M.A.I. 34.01 (withdrawal instruction) states that a withdrawal instruction is only needed when a false issue, improper evidence or an abandoned issue has been injected into the trial. The commentary implies that a withdrawal instruction is only necessary when evidence on the issue has been put squarely before the jury and then the issue is withdrawn. In this case, negligence may have been mentioned briefly early on, but all evidence at trial was equally applicable to the theories that were ultimately submitted to the jury. At no time was negligence a "false issue." Furthermore, the Court decided that a separate instruction withdrawing a claim about which the jury did not know was before it would lead to confusion. Instead, the Court made a fair and efficient decision to eliminate the single reference to negligence from Instruction No. 1 and tell the jury that a change had been made. Once again, defendant misconstrues effective judicial administration as bias or prejudice.

The Court has reviewed each of these instances and the Court's conduct in the trial in general and finds that the Court was fair and impartial. None of these instances alone or in combination demonstrates either actual bias or an appearance of bias. As defendant points out, the test is whether a reasonable person with knowledge of the circumstances would perceive bias. Defendant looks at many of these instances out of the context of their circumstances in an effort to perceive bias. Looking at each in perspective, however, demonstrates that the defendant received a fair trial and the appearance of a fair trial. Merely because a party does not prevail on some procedural issues and then receives an adverse verdict from the jury does not mean

the Court was biased. Therefore, the Court finds that disqualification or recusal is not justified.

## Defendant's Motion for Judgment as a Matter of Law or, in the alternative, for New Trial

Defendant moves for a new trial, or for judgment as a matter of law, on several grounds. The Court will treat the two issues separately.

### 1. Motion for a New Trial

In support of its motion for a new trial, defendant first argues that judicial bias throughout the trial deprived defendant of a fair trial. Defendant cites the same examples of bias as it raised in its motion to disqualify or recuse. For the same reasons discussed above, this ground for a new trial is denied.

█ As a second ground for a new trial, defendant claims that the Court improperly excluded portions of Dennis Kidder's deposition testimony, and that the Court improperly prevented defendant from reading the deposition testimony of plaintiff's witnesses Holly Graven and Dr. Peter Francis. The Court previously addressed the use of Mr. Kidder's deposition testimony in the motion to recuse.

The Court prevented defendant from using deposition testimony of plaintiff's witnesses Holly Graven and Dr. Francis, who had previously testified, but did give defendant the option of recessing the trial until the witnesses could be brought back to testify live. These witnesses did testify in plaintiff's case in chief and defendant was afforded the opportunity to cross examine them on any relevant areas. If there is testimony that was contained in a deposition that defendant forgot to raise, that is the fault of trial counsel. But to allow defendant to cross-examine a live witness during the plaintiff's case and then select portions of deposition testimony to introduce after the witness has left amounts to sandbagging and will not be permitted. If the information that defendant failed to elicit was important, defendant was given, but did not take up the opportunity to

recall the witnesses in person. This ground is denied.

Defendant's third ground for a new trial is that the Court improperly prevented counsel from conferring with Mr. Teeter during a trial break. As discussed in the motion to recuse above, the Court finds no error in this action.

Defendant's fourth ground for a new trial reiterates the argument that the Court improperly permitted plaintiff to argue punitive damages. This ground was also discussed above, and for the same reasons, is denied.

■ Defendant's fifth ground argues that the Court committed several errors in instructing the jury. First, defendant argues that the Court's refusal to give a special question that asked the jury to tell which basis of liability on which they were deciding the case was error. Defendant admits in its motion that such a special verdict is a discretionary function, but submits that the Court abused its discretion. *See* Fed.R.Civ.P. 49. The Court believes that the theories of liability were properly presented to the jury and that a special question was unnecessary.

■ Defendant also claims that the Court erred in refusing to give a withdrawal instruction on the negligence theory. As discussed in the motion to recuse or disqualify, the negligence theory was not the subject of separate evidence or argument at trial and a withdrawal instruction was not necessary or advisable.

■ Finally, defendant claims that the Court erred in its instructions to the jury when it failed to give an instruction defining "unreasonably dangerous." Defendant argues that the use of such an instruction is condoned by the Eighth Circuit. *See Cowens v. Siemens Elema AB, et al.,* 837 F.2d 817 (8th Cir.1988). The *Cowens* decision certainly does hold that giving the instruction is not error, but neither does it hold that such an instruction is necessary or even desirable. In light of the language in *Cowens,* this Court does not believe that it committed any error in refusing to allow an instruction on "unreasonably dangerous."

For its sixth ground for a new trial, defendant argues that the Court improperly allowed evidence of subsequent remedial measures. As discussed at length in the Court's Order of April 13, 1993, evidence of subsequent warnings are admissible in products liability cases and failure to warn cases under Eighth Circuit law. The Court reaffirms its previous decision on this issue.

■ Plaintiff also argues that any evidence of subsequent warnings should not have been admitted because the danger warned of was not the danger that caused plaintiff's injuries. Defendant argues that the warnings only spoke of lower leg injuries. The warning reads:

WARNING FOR USE BY EXPERT SKIERS ONLY. To reduce risk of serious injury or death: (1) binding must be custom fit for snug-NOT TIGHT-fit, (2) binding should not be used by others for whom it was not custom fitted, (3) even if properly fitted, BINDING MAY NOT RELEASE IN FALL RESULTING IN ANKLE, KNEE OR LEG INJURIES.

As plaintiff pointed out at trial, the warning can be fairly read to encompass more than mere leg injuries. The warning tells skiers of a risk of death or serious injury. Obviously leg injuries rarely involve the prospect of death, therefore, it can be fairly assumed that the warning was meant to encompass something more. The Court finds that given the broad scope of the warning, it is not limited only to leg injuries. Therefore, defendant's argument is not persuasive. This ground is denied.

Defendant's seventh ground for a new trial is that the Court improperly excluded a videotape prepared by defendant's expert Dr. Francis. This ground is considered and rejected for the same reasons given in the motion to recuse.

*2. Renewed Motion for Judgment as a Matter of Law*

A party is entitled to judgment as a matter of law when there is "no legally insufficient evidentiary basis for a reasonable jury to have found for" the non-moving party on a particular issue or when a particular claim

cannot be maintained under the controlling law. Fed.R.Civ.P. 50(a)(1). In weighing the sufficiency of the evidence, the Court must view the evidence in the light most favorable to the non-moving party and grant the non-moving party the benefit of all reasonable inferences that can be drawn from that evidence. *Nelson v. Production Credit Union Ass'n*, 930 F.2d 599, 604 (8th Cir.1991).

### A. Failure to Warn

Defendant argues that plaintiff's failure to warn case failed as a matter of law because plaintiff presented no evidence that the risk for which warnings were needed was the risk that caused the injury, and because plaintiff failed to show what type of warning should have been used to avoid the injury.

■ Defendant's first argument is that even if a warning was required because of specific risks, plaintiff's case fails because his injury was not contemplated within the risks that require a warning.

In order to prevail on a failure to warn case, plaintiff must show:

1. That Defendant sold the product in the course of its business;

2. The product was then unreasonably dangerous when put to a reasonable use without knowledge of its characteristics;

3. The Defendant did not give adequate warning of the dangers;

4. The product was used in a manner reasonably anticipated;

5. The plaintiff was damaged as a direct result of the product being sold without an adequate warning.

M.A.I. 25.05(3d); Mo.Rev.Stat. 537.760.

Defendant's argument centers on whether plaintiff's injuries must have been foreseeable. Defendant argues that since a head injury was not a foreseeable injury as a result of use the ski, there was no duty to warn against it. Defendant correctly states that there is no duty to warn of *every* conceivable risk of injury. *See Nesslerode v. Executive Beechcraft, Inc.*, 707 S.W.2d 371, 375 (Mo. banc 1986); *Rogers v. Toro Mfg.*,

522 S.W.2d 632, 637 (Mo.App.1975). However, this is not a case where a product carried a warning of some dangers and not of others and a person suffered an injury not listed. This is a case where the product contained no warning on the product at all.[2]

The testimony of plaintiff's experts, viewed in the light most favorable to plaintiff, established that the ski was unreasonably dangerous for a skier of plaintiff's ability, that it was for expert skiers only, and that it was dangerous because it presented added risks by not coming off in a fall.

The Court finds language in *Nesslerode* helpful on this issue:

> The determinative issue in a products liability failure to warn case is whether the information accompanying the product effectively communicates to the consumer or user the dangers that inhere in the product during normal use and the dangerous consequences that can or will result from misuse or abnormal use of the product.

*Nesslerode*, 707 S.W.2d at 382. The evidence showed that the product contained added inherent dangers because the ski would not come off during a fall. However, there was no information accompanying the product that communicated anything to the user about *any* added dangers. To the Court, that is the crux of this theory. The problem is not that defendant did not warn against the specific risk of a ski tip crushing the user's skull, but that defendant did not warn against the general risk of added danger and unpredictability. Without any warning of the specific characteristics and dangers of the ski design, plaintiff was unable to make an informed decision about whether to use the product. Informed consent and allowing a person to take safety precautions is the point behind this theory of recovery. The Court finds that the jury was presented with sufficient evidence to find for plaintiff on this issue.

Defendant next argues that the jury was not given sufficient evidence on which to conclude that a warning would have made any difference. The Court finds that the

---

**2.** While the evidence did show that some warning was loosely attached to the ski at the time of sale, the evidence was uncontradicted that the warning did not make it to the user in this case.

testimony of Dr. Leslie Whitaker was sufficient evidence on which the jury could have found that plaintiff would have followed a warning.

### B. Products Liability—Design Defect

■ Defendant argues that there was insufficient evidence to find that the waterski in question was defectively designed. Defendant argues that the only claim of defect is that the ski is dangerous for non-experts. Defendant presents testimony of plaintiff's experts Roland Hillier and Dr. Francis that shows that they believe that the waterski is not defective when used by expert skiers.

However, the evidence, viewed in a light favorable to the plaintiff, established that the waterski was unreasonably dangerous when used by non-experts, and that such a use was reasonably anticipated. This is all that is required to prove a design defect in a products liability case. *See* Mo.Rev.Stat. § 537.-760; M.A.I. 25.04.

Defendant argues that this type of products liability claim would render failure to warn claims unnecessary. The Court's role in this motion is to decide whether there was sufficient evidence to support the elements of a claim as that claim exists under controlling law. Whether or not this claim would be better labelled a failure to warn case is not for this Court to decide. Instead, this Court finds that plaintiff produced sufficient evidence to allow a reasonable jury to decide that the waterski was unreasonably dangerous when put to a reasonably anticipated use. This ground is denied.

### 3. Assumption of the Risk

■ Finally, defendant moves for judgment as a matter of law on the issue of assumption of the risk. Defendant argues that assumption of the risk should work as an absolute bar, as a matter of law, to any recover for plaintiff's injuries.

The doctrine of assumption of the risk in products liability cases is governed by statute and is incorporated into the system of comparative fault. Mo.Rev.Stat. § 537.765. The statute provides that the defendant shall plead and prove comparative fault as an affirmative defense. The statute defines fault for the purposes of strict liability in terms of assumption of the risk: "Use of the product with knowledge of a danger involved in such use with reasonable appreciation of the consequences and the voluntary and unreasonable exposure to said danger." Mo.Rev.Stat. § 537.765(2). The Court instructed the jury that they could consider any fault on the part of the plaintiff. *See* Jury Instruction No. 10. That instruction, submitted by defendant, tracked the language of Mo.Rev.Stat. § 537.-765(2).

The Court is required on this matter to view the evidence in the light most favorable to the plaintiff and weigh whether sufficient evidence was adduced at trial to allow a reasonable jury to find that plaintiff did not contribute to his own injury. Plaintiff himself testified that he did not know of the dangers posed by the experts-only ski and did not appreciate the consequences of the danger. The testimony of plaintiff is sufficient to support the jury's decision on this matter.

Finally, the Court declines to hold, as a matter of law, that a person engaging in any recreational sport, let alone waterskiing, assumes all risks of that sport, even those risks created by an unreasonably dangerous product.

For the reasons discussed, defendant's motion for a new trial, or in the alternative, for judgment as a matter of law is denied.

### Stay of Execution and Approval of Supersedeas Bond

■ Defendant moves this Court to approve a partial supersedeas bond in the amount of $820,770.73, which represents the value of defendant's liability insurance policy after legal fees and expenses have been paid. Defendant is also requesting that the Court stay execution of judgment only as to the amount of the partial bond plus interest.

Federal Rule of Civil Procedure 62(d) provides that an appellant may obtain a stay of execution on the judgment pending appeal by posting an adequate supersedeas bond. *See United States v. Mansion House Center Redevelopment Co.*, 682 F.Supp. 446, 449 (E.D.Mo.1988). A supersedeas bond for the

full amount of judgment, interest and costs is the normal amount required to merit a stay under Fed.R.Civ.P. 62(d). *Id.* (citing *Miami International Realty Co. v. Paynter,* 807 F.2d 871, 873 (10th Cir.1986)). Although partial bonds may be appropriate in exceptional cases, and even under Missouri law, *see State ex rel. Kissell v. Clark,* 848 S.W.2d 44 (Mo.Ct.App.1993), defendant has demonstrated no circumstances that would require variance from standard procedure. Defendant's motion for approval of partial bond and limited stay of execution will be denied.

For the reasons discussed above, it is

ORDERED that plaintiff's motion to register judgment is GRANTED. It is further

ORDERED that defendant's motion for recusal or disqualification is DENIED. It is further

ORDERED that defendant's motion for judgment as a matter of law, or in the alternative, new trial is DENIED. It is further

ORDERED that defendant's application for approval of supersedeas bond and surety and for limited stay of execution is DENIED.