Robert L. **KOSTELECKY** and Linda **Kostelecky**, Appellants,

v.

**NL ACME TOOL/NL INDUSTRIES, INC., a/k/a NL Industries, Inc., a foreign corporation, Appellee.**

No. 87–5221.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 16, 1987.

Decided Jan. 27, 1988.

David F. Senn, Dickinson, N.D., for appellants.

Daniel L. Hovland, Bismarck, N.D., for appellee.

Before LAY, Chief Judge, and HEANEY and MAGILL, Circuit Judges.

HEANEY, Circuit Judge.

Robert and Linda Kostelecky appeal from a jury verdict dismissing their claims against N.L. Acme Tool Company (N.L.). We affirm.

On May 6, 1987, Robert Kostelecky injured his hand and wrist in an accident while working for his employer, Noble Drilling Corporation (Noble), on an oil rig near Killdeer, North Dakota. Gulf Oil Corporation operated the oil venture and hired Noble as a drilling contractor. Gulf had also hired N.L. to perform specialized operations and field service work on the rig. Kostelecky alleges that his injury occurred while working on a Noble crew under the supervision and control of an N.L. representative.

On April 3, 1984, Kostelecky filed a complaint in federal district court alleging negligence by Gulf and N.L. and asserting various vicarious liability theories against Gulf. On November 10, 1986, the district court issued a pre-trial Order and Memorandum in which it, among other things,

granted motions by Gulf and N.L. requesting separate trials on the issues of liability and damages. On December 31, 1986, Gulf was dismissed pursuant to a stipulation. On April 8, 1987, the jury returned a verdict finding N.L. was not negligent. Judgment was entered in accordance with the jury verdict on April 9, 1987.

On appeal, Kostelecky argues that the district court erred in (1) admitting into evidence an accident report of Jester Beck (2) permitting a jury instruction on the issue of N.L.'s agency relationship with Gulf (3) submitting a special verdict form to the jury that was not justified by the evidence and was confusing (4) ordering separate trials on the issues of liability and damages and (5) quashing the subpoena duces tecum of Greg Tucker, an N.L. employee.

### 1. Report of Jester Beck

■ Kostelecky contends that the district court erred in admitting into evidence an accident report of Jester Beck, one of Kostelecky's co-workers and an eyewitness to the accident. In particular, Kostelecky objects to statements in the report that the accident was caused by "the injured's own conduct" and that the accident could have been avoided if Kostelecky had listened to warnings and instructions given to him just prior to the accident. He contends that the statements are inadmissible because they are nothing more than the legal conclusions of a lay witness and could not have assisted the trier of fact in determining a factual issue. N.L. argues that the report is admissible because it represents Beck's firsthand observations, recorded within hours of the accident, which were therefore helpful to the jury in its deliberations. Moreover, N.L. argues that under Fed.R.Evid. 704(a), testimony in the form of an opinion is not rendered inadmissible merely because it embraces an ultimate issue to be decided by the trier of fact.

The admissibility of opinion testimony is generally committed to the sound discretion of the trial court. *Strong v. E.I. DuPont de Nemours Co., Inc.*, 667 F.2d 682, 685 (8th Cir.1981). Under the Federal Rules of Evidence, opinion testimony is not inadmissible solely because it embraces an ultimate issue to be decided by the trier of fact. Fed.R.Evid. 704(a). This does not, however, mean that all opinion testimony as to ultimate issues is admissible. In the case of a witness not testifying as an expert, the opinion testimony must be "(a) rationally based on the perception of the witness and (b) be helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Fed.R. Evid. 701. In the case of an expert witness, the opinion must "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed.R.Evid. 702.

Under either rule, evidence that merely tells the jury what result to reach is not sufficiently helpful to the trier of fact to be admissible. *See Hogan v. American Telephone and Telegraph Co.*, 812 F.2d 409, 411–12 (8th Cir.1987). Often such evidence is labeled a "legal conclusion." As the comment of the Advisory Committee on the federal rules states:

> [T]he question, "Did T have capacity to make a will?" would be excluded, while the question, "Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?" would be allowed.

Although it is not easy to distinguish permissible questions from those that are not permissible, *see Hogan*, at 412, we find that the trial court abused its discretion in admitting the accident report. The case was tried on a theory of negligence. Legal causation was very much in dispute. Therefore, in the context of this case, the opinion as to causation served to do nothing more than tell the jury what result it should reach. Using the example in the advisory committee comment, the question was more akin to "Did T have capacity to make a will?" than a request for the specific perceptions of the witness. *See, e.g., Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 239–40 (5th Cir.1983) (excluding expert opinion as to the cause of an accident in a negligence case); *Strong v. E.I. DuPont de*

*Nemours Co., Inc.,* 667 F.2d 682, 685 (8th Cir.1981) (affirming trial court's exclusion of expert's testimony that a lack of adequate warnings and instructions constituted defects which made a product unreasonably dangerous); *cf. Hogan,* at 411 (finding district court's failure to sustain objection to question whether witness in an employment discrimination suit had witnessed any discriminatory acts constituted harmless error). *But see Wade v. Haynes,* 663 F.2d 778, 783–84 (8th Cir.1981) (affirming trial court's admission of testimony by corrections administration expert that prison official's conduct constituted "egregious failure"); *Nielson v. Armstrong Rubber Co.,* 570 F.2d 272, 276–77 (8th Cir.1978) (admitting expert's opinion that a manufacturing process caused a defect in a tire rim). Thus, we find that Beck's accident report was erroneously admitted.[1]

The error in admitting the report was, however, harmless in this instance because it did not substantially affect Kostelecky's rights. *See* Fed.R.Evid. 103(a); *Hogan,* at 410. Examination of the record reveals that just prior to the admission of the report, Beck testified, without objection, that he and another member of the crew had warned Kostelecky as to the danger involved and instructed him concerning proper safety measures to be followed. Beck also testified, without objection, that the accident could have been avoided if Kostelecky had followed the warnings that were given to him. Trial transcript at 100–01.

In addition, accident reports of three of Kostelecky's co-workers at the time of the accident were admitted without objection. Each of the reports were prepared on a form identical to that used by Jester Beck. In each of the reports Question 4 stated, "In my opinion the accident was caused by," followed by seven possible responses ranging from "The injured's own conduct" to "defective or dangerous equipment." In each of the three reports admitted into evidence, without objection, the response

indicating that the accident was caused by the injured's own conduct was selected. Trial transcript at 136 (report of James Huber); Trial transcript at 161 (report of Donald Buck); Trial transcript at 193 (report of Larry Morgan).

Finally, question 7 on the accident report form asked the open ended question, "How do you think this accident could have been avoided?" The Huber report responded, "The accident could have been avoided by [Kostelecky] listening to others tell him to move and let NL equipment fall to the floor instead of trying to hold it." Trial transcript at 138. The Buck report responded that the accident could have been avoided if Kostelecky "would have let it drop and gotten out of the way." Trial transcript at 162. The Morgan report indicated that the accident could have been avoided if Kostelecky "could have gotten out of the way when told." Trial transcript at 194. Thus, in light of the contents of the three other accident reports admitted into evidence without objection, we hold that any error in admitting the Beck accident report was harmless and did not substantially affect Kostelecky's rights.

## 2. The Agency Instruction

■ Kostelecky contends that the district court erred in submitting an instruction to the jury stating that N.L. was the agent of Gulf and that Gulf was chargeable with any negligent acts of N.L. He argues that the instruction was prejudicial because it was confusing, was not based on evidence in the case and did not bear upon any matter at issue in the case. N.L. argues that the relationship of the parties remained very much an issue in the case and that the evidence adduced at trial bears this out. Having carefully reviewed the record with respect to the matter, we agree with N.L. that the instruction was proper, despite the fact that Gulf and Noble were

---

1. Our finding makes it unnecessary to consider whether the report is admissible hearsay as a business record, *see* Fed.R.Evid. 803(8), a present sense impression, *see* Fed.R.Evid. 803(1), or a recorded recollection, *see* Fed.R. Evid. 803(5). We note, however, that the fact that the report was made at the request and under the supervision of Noble leaves its reliability open to question.

no longer parties to the case.[2]

### 3. The Special Interrogatory Form

■ Kostelecky argues that the district court erred in giving a special verdict form to the jury that was erroneous and misleading. In particular, he argues that the form was faulty because it did not require the jury to apportion negligence among Gulf, Noble and N.L. if it found that N.L. was not negligent. He contends that this is contrary to North Dakota law which requires the factfinder to apportion negligence among all tortfeasors if the plaintiff has released one or more defendants from liability. *See Bartels v. City of Williston,* 276 N.W.2d 113 (N.D.1979). Kostelecky fails, however, to point out the prejudice resulting from failure to apportion liability if the sole remaining defendant is found to be not negligent. Under these circumstances, we hold that the verdict form was not erroneous or misleading.[3]

### 4. Separate Trial Order

■ Kostelecky contends that the district court erred in granting N.L.'s motion for separate trials on the issues of liability and damages. Specifically, Kostelecky argues that evidence as to the nature and extent of his injury would have been helpful to the jury in resolving a disputed factual issue concerning which of two tools fell on his hand and caused the injury. N.L. argues that the district court did not abuse its discretion in granting the motion to bifurcate the trial in light of the numerous expert witnesses Kostelecky intended to call on the issue of the extent of the injury. As the district court stated, "As a result of the injury, plaintiff has undergone in excess of 30 surgical procedures. It can be anticipated that testimony regarding the purpose, extent and success of each of those surgical procedures will be time consuming." Order and Memorandum at 10.

A decision by the trial court to bifurcate a trial is committed to its sound discretion and will be overturned on appeal only for an abuse of that discretion. *See Beeck v. Aquaslide 'N' Dive Corp.,* 562 F.2d 537 (8th Cir.1977). In this case, the district court was acutely aware of the nature of the evidence likely to be adduced at trial and the time it would take to present it. Moreover, the district court, in its Memorandum and Order indicated that the fact of injury is an element of negligence and was properly a part of Kostelecky's case. The court in no way indicated that it would exclude evidence as to the fact or cause of the injury at the liability trial. The court's Memorandum and Order reveals that it considered the relevant factors listed in Fed.R.Civ.P. 42(b). We cannot say that its ruling constitutes an abuse of discretion.

### 5. The Subpoena Dues Tecum of Greg Tucker

■ Kostelecky contends that the district court erred in quashing a subpoena duces tecum served upon Greg Tucker, a district supervisor of N.L. Industries in Dickinson, North Dakota. The subpoena ordered Tucker to appear in court and to bring with him certain tools and equipment similar to those used on the operation in which Kostelecky was injured. Kostelecky contends that the tools were necessary for the jury to fully appreciate the difference in size of the respective tools the parties claim caused the injury. N.L. objected to the subpoena as unduly burdensome and expensive. It argued that tools similar to those requested had been made available for inspection and photographed by Kostelecky's counsel. In addition, N.L. argued that producing the tools would be costly because it was in the business of renting such tools to others engaged in oil work. The court quashed the subpoena stating that if the difference in the size of the tools was as great as Kostelecky claimed, the jury would have no trouble understanding

---

**2.** In any event, it appears Kostelecky may not now raise the instruction as error because he did not raise a timely objection to it in the district court. *See* Fed.R.Civ.P. 51.

**3.** In addition, we note that Kostelecky also is precluded from assigning error to the verdict form because he failed to object to it prior to it being submitted to the jury. *See* Fed.R.Civ.P. 51.

that fact and the presence in the courtroom would not aid the jury in any respect.

Under Rule 45(b) of the Federal Rules of Civil Procedure, a subpoena may be issued commanding a persons to produce "tangible things." Upon motion, however, the court may modify or quash the subpoena if the person on whom it is served shows that it is unreasonable or oppressive. *See, e.g.,* Wright and Miller, Federal Practice and Procedure § 2457 (1971 and supp. 1987). In this case, N.L. showed that the equipment was typically rented to drillers on a daily basis and that the daily rental value of the requested equipment was as high as $1,288. In addition, N.L. states that personnel would have been required to transport the equipment. In light of the cost and the fact that similar equipment had been made available for photographs and inspection, we cannot say that the district court erred in quashing the subpoena.

Accordingly, we affirm the entry of judgment in favor of N.L. on the jury verdict.